UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


INNOTECH SALES & ENGINEERING, LLC
A MICHIGAN LIMITED LIABILITY COMPANY,

             Plaintiff,                            Case No. 09-10731

vs.                                       Hon. George Caram Steeh

PAUL HOSTETLER,

             Defendant.

_____/


ORDER GRANTING DEFENDANT'S MOTION
TO STAY PROCEEDING AND COMPEL ARBITRATION (#14)


      This matter is before the Court on Defendant Paul Hostetler's ("Hostetler") motion
to dismiss this proceeding without prejudice or, alternatively, to stay this proceeding
pending arbitration pursuant to the Federal Arbitration Act ("FAA").  Hostetler filed his
motion April 27, 2009.  The Court heard oral arguments on this matter June 24, 2009.
For the reasons set forth below, Hostetler's motion is GRANTED.

FACTUAL BACKGROUND

      Hostetler owns Triple Diamond Plastics ("Triple Diamond"), a Florida corporation
in the business of manufacturing collapsible storage bins, pallets and caps which was
interested in expanding its business into the automotive sector.  (Complaint, ¶ 2).
Plaintiff Innotech Sales & Engineering, LLC ("Innotech") is a Michigan company with
business relationships in the automotive sector.  (*Id.*, ¶¶ 1, 6 ).  The automotive industry
has certain precise specifications for containers it uses.

(*Id.*, ¶ 7). On September 10, 2007, Triple Diamond and Innotech entered into an Agreement of Sales Representation ("the Agreement") under which Innotech would serve as a sales representative and solicit business on behalf of Triple Diamond in return for commissions. (*Id.*, ¶ 5). The Agreement contains an arbitration clause which reads "Any claim or controversy arising from this Agreement shall be submitted to private arbitration . . ." (Agreement, ¶ 12).

Innotech alleges in its Complaint that Hostetler met with Tom Davis (owner and officer of Innotech) on August 9, 2007, and made verbal assurances that Triple Diamond would manufacture collapsible storage bins to meet the automotive industry's specifications and that Hostetler would personally contribute additional capital to Triple Diamond to obtain completely new tooling for its injection machines, if such contributions were required. (Complaint, ¶ 12). Innotech further alleges it relied on Hostetler's personal representation that Triple Diamond would acquire tooling and produce collapsible storage bins according to certain specifications. (*Id.,* ¶ 13). Innotech further alleges that Triple Diamond failed to obtain the new tooling, that Hostetler failed to make the required capital contributions, and that Triple Diamond produced a line of collapsible bins which did not meet industry specifications, leaving Innotech in a position of attempting to sell a product that was inadequate. (Complaint, ¶¶ 15, 16)

On January 26, 2009, Innotech commenced this action against Hostetler in state court, claiming that Hostetler's statements amounted to Misrepresentation, Fraud in the Inducement, Silent Fraud, Promissory Estoppel and/or Innocent Misrepresentation. Innotech sought as damages, amongst other things, lost profits anticipated by the

2

Agreement and expenses incurred in performance of the Agreement.  Innotech attached

the Agreement as Exhibit A to its complaint.  On February 26, 2009 Hostetler removed

the action to this Court, based on diversity jurisdiction.

LEGAL STANDARD

Under 9 U.S.C. § 4 of the FAA, a federal district court must "make a number of

threshold determinations before compelling arbitration[.]"  *Fazio v. Lehman Brothers,*

*Inc.*, 340 F.3d 386, 392 (6th Cir. 2003).

> When considering a motion to stay proceedings and compel arbitration
> under the Act, a court has four tasks: first, it must determine whether the
> parties agreed to arbitrate; second, it must determine the scope of that
> agreement; third, if federal statutory claims are asserted, it must consider
> whether Congress intended those claims to be nonarbitrable; and fourth, if
> the court concludes that some, but not all, of the claims in the action are
> subject to arbitration, it must determine whether to stay the remainder of
> the proceedings pending arbitration.

*Id.* at 392 (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)).

Under § 2 of the FAA, written agreements to arbitrate "shall be valid, irrevocable,

and enforceable, save upon such grounds as exist in law or in equity for the revocation

of any contract."  *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir.

2002) (quoting 9 U.S.C. § 2).  "Courts are to examine the language of the contract in

light of the strong federal policy in favor of arbitration [, and] any ambiguities in the

contract or doubts as to the parties' intentions should be resolved in favor of arbitration."

*Id.* (quoting *Stout*, 228 F.3d at 714).  Claims arising out of activities contemplated by

agreements containing an arbitration provision are covered by the arbitration clause.

*Fazio*, 340 F.3d at 395.  Court must be cautious, however, against "forcing unwilling

parties to arbitrate a matter they reasonably would have thought a judge, not an

arbitrator, would decide." *Id.* (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). Whether a party's claims are subject to arbitration is an issue of law for the court to decide. *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576 (6th Cir. 2003).

"Under the FAA, a district court's consideration of a motion to compel arbitration is limited to determining whether the parties entered into a valid agreement to arbitrate, and does not reach the merits of the parties' claims." *Match-E-Be-Nash-She-Wish-Band of Pottawatomi Indians v. Kean-Argovitz Resorts*, 383 F.3d 512, 514 (6th Cir. 2004) (quoting *Burden v. Check Into Cash*, 267 F.3d 483, 485 (6th Cir. 2001)). "Once a district court determines that a valid agreement to arbitrate exists, challenges to other distinct parts of the contract are to be resolved by the arbitrator." *Id.* at 515 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)).

<u>ANALYSIS</u>

Innotech does not dispute that the FAA governs in this matter, nor does Innotech dispute that this matter would fall under the Agreement's arbitration clause if Innotech had sued Triple Diamond instead of Hostetler. Innotech instead argues that arbitration can only be compelled between parties that agreed to arbitrate and that – since Hostetler never signed the Agreement individually – Innotech never agreed to arbitrate with Hostetler.

However, circuit courts have held that a non-signatory to an agreement may compel arbitration with a signatory under a theory of "equitable estoppel" in certain circumstances. *See CD Partners, LLC v. Grizzle*, 424 F.3d 795, 798 (8th Cir. 2005);

4

*JLM Indus., Inc. v. Stolt-Nielsen, SA*, 387 F.3d 163, 177 (2d Cir. 2004)*; Grigson v.*

*Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527-28 (5th Cir. 2000); *MS Dealer Serv.*

*Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)*; Sunkist Soft Drinks, Inc. v.*

*Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir. 1993)*; Hughes Masonry Co. Inc., v.*

*Greater Clark County School Building Corp.,* 659 F.2d 836, 838 (7th Cir. 1981).  The

Eleventh Circuit has summarized this equitable estoppel theory as follows:

> [E]quitable estoppel applies when the signatory to a written agreement
> containing an arbitration clause "must rely on the terms of the written
> agreement in asserting [its] claims" against the nonsignatory. When each
> of a signatory's claims against a nonsignatory "makes reference to" or
> "presumes the existence of" the written agreement, the signatory's claims
> "arise[ ] out of and relate [ ] directly to the [written] agreement," and
> arbitration is appropriate . . . Otherwise, "the arbitration proceedings
> [between the two signatories] would be rendered meaningless and the
> federal policy in favor of arbitration effectively thwarted."

*MS Dealer*, 177 F.3d at 947 (internal citations omitted). The Second Circuit summarized

this line of cases by saying "the circuits have been willing to estop a signatory from

avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to

resolve in arbitration are intertwined with the agreement that the estopped party has

signed." *Thomson-CSF v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2nd Cir.1995).  This

Court has also found these decisions persuasive.  *See Cunningham v. Van Ru Credit*

*Corp.* No. 06-10452, 2006 WL 3289775, at *3 (E.D.Mich.) (Zatkoff, J.).

Here, each of Innotech's claims clearly "makes reference to" or "presumes the

existence of" the Agreement.  Innotech's Complaint specifically references the

Agreement in paragraphs 5, 6, 8, 13, 14, 18, 22, 23, 25, and 27 and alludes to the

Agreement throughout.  Most of the damages Innotech seeks (*i.e.*, lost profits which

would have stemmed from the Agreement and expenses incurred in performance of the

Agreement) are clearly premised on the existence of the Agreement.  The Agreement was attached as Exhibit A to Innotech's Complaint. It is beyond reasonable dispute that the issues to be resolved in this litigation between Hostetler and Innotech are "intertwined with the agreement," which Innotech signed.

Although the Sixth Circuit noted the *Thomson-CSF* analysis approvingly in *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003), it has not formally recognized the equitable estoppel framework described in that line of cases.  However, the Sixth Circuit recognized that a non-signatory could compel arbitration with a signatory in *Federated Dept. Stores v. J.V.B. Industries Inc.,* 894 F.2d 862, 870-71 (6th Cir. 1990).  In *Federated Dept. Stores*, non-signatory corporation J.V.B. Industries, Inc. ("JVB") shared a common owner with TAB Industries, Inc. ("TAB") which contracted with Federated Department Stores ("Federated").  JVB was allowed to compel arbitration with Federated based on a written agreement between TAB and Federated, which JVB never signed.  *Id.*  The court based its decision on the closeness of the relationship between TAB and JVB, noting that the companies shared an office as well as a common owner. *Id.*

Although, as Innotech points out, Hostetler is not an officer of Triple Diamond, as the corporation's owner he clearly has a close relationship to Triple Diamond.  If, as Innotech alleges, Hostetler is active in Triple Diamond's business dealings this relationship is closer still.  Indeed, Innotech alleges that Hostetler is active in Triple Diamond's development of business relationships and contract negotiations and that he has some influence in Triple Diamond's manufacturing operations.  (Complaint, ¶¶ 5, 6, 12)

6

Innotech seeks to distinguish the instant matter from the cases holding that a non-signatory may compel arbitration by noting – that since Hostetler is not an officer of Triple Diamond – he has no agency relationship to the company.  While Innotech cites cases holding that an agency relationship between a non-signatory and a signatory is sufficient for a non-signatory to compel arbitration, Innotech does not cite cases holding an agency relationship is necessary for a non-signatory to compel a signatory into arbitration.  Indeed, the opposite appears to be true. *See CD Partners,* 424 F.3d at 798; *JLM Indus.*, 387 F.3d at 177*; Grigson*, 210 F.3d at 527-28; *MS Dealer*, 177 F.3d at 947*; Sunkist Soft Drinks*, 10 F.3d at 757*; Hughes Masonry,* 659 F.2d at 838.

Innotech further seeks to avoid arbitration by styling its claim in tort (*e.g.* Fraudulent Inducement) rather than as a contractual claim.  However, Innotech does not claim any fraud regarding the genesis of the arbitration clause specifically.  In *Prima Paint Corp.*, "the Supreme Court held that 'a claim of fraud in the inducement of the entire contract' is a matter to be resolved by the arbitrators, not the federal courts." *Fazio*, 340 F.3d at 393 (*quoting Prima Paint Corp.*, 388 U.S. at 402-04).

Moreover, as the Sixth Circuit observed in *Arnold v. Arnold Corp.-Printed Communications For Business*, 920 F.2d 1269, 1281 (6th Cir.1990), if a plaintiff "can avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties as [defendants] in his complaint, or signatory parties in their individual capacities only, the effect of the rule requiring arbitration would, in effect, be nullified."  Allowing Innotech to proceed in this Court against Hostetler individually would effectively gut the arbitration clause contained in the Agreement between Innotech and Triple Diamond, Hostetler's company.

7

Finally, Innotech argues that having obtained a stay in this Court, Hostetler may attempt to later argue that he cannot be bound by any arbitration, as he did not sign the Agreement.  However, in his reply brief supporting his motion, Hostetler states "Hostetler is ready, willing, and able to defend Innotech's claims in the proper forum, which is arbitration," and that "Hostetler is ready and willing to arbitrate the claims asserted against him in conjunction with anticipated claims between Triple Diamond and Innotech."  (Docket # 20).  Hostetler's counsel reiterated during oral argument that Hostetler is willing to allow the claims raised against him personally in the present case to be arbitrated.  Innotech's reluctance to take Hostetler on his word on this point is understandable.  In any event, Innotech will have recourse in this Court if Hostetler reneges on his agreement to arbitrate the claims raised against him in this lawsuit. Should Hostetler refuse to participate in or be bound by the arbitration he sought to compel, then Innotech can file a motion to re-open the present case and this litigation will proceed accordingly.

For the above reasons, Defendant's motion dismiss or stay this proceeding is GRANTED.  For administrative purposes, this case hereby is STAYED.  This case may be reopened, if necessary, by motion of either party without the payment of additional fees or costs.


        SO ORDERED.

Dated:  July 6, 2009


                                s/George Caram Steeh
                                GEORGE CARAM STEEH

8

UNITED STATES DISTRICT JUDGE

```
┌─────────────────────────────────────────────────┐
│              CERTIFICATE OF SERVICE               │
│                                                   │
│  Copies of this Order were served upon attorneys  │
│  of record on July 6, 2009, by electronic and/or  │
│              ordinary mail.                        │
│                                                   │
│              s/Marcia Beauchemin                  │
│                 Deputy Clerk                      │
└─────────────────────────────────────────────────┘
```